UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS SANTOS, | ) |
|       Plaintiff, | ) |
| v. | ) |
| | ) Case No. 14-cv-3321 |
| DR. SALEH OBAISI; | ) |
| SHANEL BARNETT; | ) Judge John W. Darrah |
| WEXFORD HEALTH SOURCES INC.; | ) |
| CORRECTIONAL OFFICER FISHER; | ) |
| and WARDEN TARRY WILLIAMS, | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carlos Santos, filed a Second Amended Complaint against Defendants Dr. Saleh Obaisi and Wexford Health Sources (collectively, "Doctor Defendants"), as well as Shanel Barnett, Correctional Officer Fisher, and Warden Tarry Williams (collectively, "IDOC Defendants"), asserting various claims regarding the medical treatment Plaintiff received for his scoliosis. On January 20, 2016, Defendants filed Motions for Summary Judgment. For the reasons set forth more fully below, Defendant Obaisi and Wexford's Motion for Summary Judgment [83] and Defendants Barnett, Fisher, and Williams's Motion for Summary Judgment [87] are granted.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to

concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff Carlos Santos has been incarcerated in the Illinois Department of Corrections ("IDOC") since 2007. (Dkt. 93, ¶ 1). During the relevant timeframe, Plainitff was incarcerated at Stateville Correctional Center. (*Id.*) Defendant Wexford is a medical contractor for IDOC and Stateville. (*Id.*) Defendant Saleh Obaisi worked at Stateville Correctional Center, starting in August 2012. (*Id.* ¶ 2.) Defendant Jacquel Fisher is a Correctional Officer at Stateville. (Dkt. 95, ¶ 1.) Defendant Shanal Barnett is a Licensed Practical Nurse and a Corrections Medical Technician at Stateville. (*Id.* ¶ 2.) Defendant Tarry Williams is the current warden of Stateville.

2

Plaintiff was diagnosed with scoliosis while incarcerated at Cook County Jail. (Dkt. 93, ¶ 10). Plaintiff had never visited a doctor concerning his back and never had x-rays or an MRI of his back prior to incarceration. (Dkt. 95, ¶ 7.) Plaintiff was prescribed muscle relaxers and pain medication for his scoliosis while he was in the Cook County Jail. (Dkt. 93, ¶ 10) Plaintiff was transferred to Stateville in 2007 but did not complain of back pain until 2012. (*Id.* ¶ 11.)

On May 2, 2012, Plaintiff was seen by Defendant Barnett at his cell. (Dkt. 95, ¶¶ 34, 36). Barnett's progress note stated that Plaintiff was able to climb from the top of his bunk and that there was no swelling or bruising on his back. (*Id.* ¶ 36.) Barnett provided Plaintiff with analgesic balm and Tylenol and told Plaintiff that he would be scheduled to see a doctor. (*Id.*) Plaintiff was scheduled for a follow-up appointment on May 21, 2012, though Barnett does not remember if she made the appointment. (*Id.* ¶¶ 37-39.)

On May 4, 2012, Plaintiff attempted to visit the healthcare unit. (*Id.* ¶ 25.) Plaintiff did not have a pass to the healthcare unit. (*Id.*) Plaintiff was escorted to the healthcare unit by a correctional officer, but Fisher told Plaintiff that he could not enter because he did not have a pass. (*Id.* ¶ 24.) Fisher testified that whenever an inmate came to the healthcare unit without a pass, and the inmate was not on the list, she would call the nurse and communicate what the inmate tells Fisher. (*Id.* ¶ 27.) Fisher does not recall her encounter with Plaintiff. (*Id.*) Fisher does not make decisions about whether an inmate is seen in the healthcare unit. (*Id.* ¶ 31.) Nurses and doctors decide whether an inmate is seen in the healthcare unit. (*Id.*)

On August 20, 2012, Plaintiff was seen by a physician's assistant who referred Plaintiff to Obaisi for evaluation of scoliosis and back pain. (Dkt. 93, ¶ 14.) Plaintiff was also prescribed analgesic balm and Naprosyn. (*Id.*) On September 11, 2012, Plaintiff saw Obaisi, who reviewed the Plaintiff's x-rays and noted that Plaintiff had mild scoliosis. (*Id.* ¶ 15.) Obaisi also noted

3

that Naprosyn moderately helped Plaintiff's back pain. (*Id.*) On November 9, 2012, Plaintiff again saw Obaisi, who diagnosed Plaintiff with mild scoliosis and prescribed a back brace. (*Id.* ¶ 16.) Plaintiff was seen by Obaisi on November 14, 2012, and November 21, 2012. (*Id.* ¶ 17.) The medical notes for those dates do not indicate that Plaintiff complained of back pain. (*Id.*)

In 2013, Plaintiff received pain medication, an abdominal binder, analgesic balm, physical therapy, and x-rays. (*Id.* ¶ 18.) On June 14, 2013, Plaintiff saw a certified medical technician and was given a refill of his prescription for pain medication. (*Id.* ¶ 19.) On July 22, 2013, Plaintiff saw a physician's assistant who noted that Plaintiff complained his back pain was getting worse. (*Id.* ¶ 20.) The physician's assistant issued a permit for an abdominal binder, analgesic balm, Robaxin, and Naprosyn and referred Plaintiff to Obaisi. (*Id.*) Plaintiff was unable to attend medical appointments on August 8, 2013, August 29, 2013, and September 18, 2013 due to lockdowns. (*Id.* ¶ 22.) During lockdowns, regular visits to the Health Care Unit are not permitted, though inmates may visit if it is a medical emergency. (*Id.*) On December 12, 2013, Plaintiff had an x-ray that showed he had moderate scoliosis. (*Id.* ¶ 21.) On April 23, 2014, Plaintiff received a physical therapy evaluation and was instructed to perform physical therapy. (*Id.* ¶ 24.) During the evaluation, Plaintiff was noted to have mild scoliosis. (*Id.*)

On January 20, 2015, Plaintiff was evaluated by an orthopedic specialist, Dr. Mark Gonzalez, who recommended physical therapy and a follow-up visit in six months. (*Id.* ¶ 26.) Gonzalez's recommendation did not change the course of treatment that Plaintiff had been receiving. (*Id.* ¶ 27.) Dr. Wang, Gonzalez's associate, ordered x-rays done at the University of Illinois at Chicago and created a treatment plan that included physical therapy. (*Id.* ¶ 28.) Wang did not recommend a change in treatment. (*Id.* ¶ 29.) On July 28, 2015,

Dr. Nitu Saran performed an MRI of Plaintiff's lower back based on a referral by Obaisi. (*Id.* ¶ 30.) The MRI was compared to x-rays taken on January 20, 2015, and Plaintiff's scoliosis was found to be stable. (*Id.* ¶ 30.) Saran did not recommend a particular course of treatment. (*Id.* ¶ 31.) Plaintiff continued to receive pain medication for his back pain in 2015. (*Id.* ¶ 32.)

Plaintiff has a low gallery/low bunk permit, receives pain medication, has seen a specialist, and has received x-rays and an MRI. (*Id.* ¶ 33.) Plaintiff is able to walk and sit. (*Id.* ¶ 34.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

# ANALYSIS

## *Count I*

In Count I, Plaintiff alleges that Obaisi and Barnett were deliberately indifferent to his health by failing to properly treat his scoliosis. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)). Plaintiff must satisfy two elements to prove a deliberate indifference claim: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). For the objective element, Plaintiff must show that he had an objectively serious medical need. *Id.* "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). For the subjective element, Plaintiff must show that Defendants "were aware of his serious medical need and were deliberately indifferent to it." *McGee*, 721 F.3d at 480.

Deliberate indifference requires more than negligence or even malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Roe*, 631 F.3d at 857; *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). Simple disagreement with a doctor's medical judgment is not enough to prove deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "A medical professional is

entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Pyles*, 771 F.3d at 409 (internal citations and quotations omitted).

Doctor Defendants

Doctor Defendants first argue that Plaintiff does not suffer from an objectively serious medical condition. Plaintiff testified that he is in consistent and substantial pain. (Dkt. 101, ¶ 1.) Plaintiff also has stated that he has difficulty sleeping due to pain. (*Id.* ¶ 7.) However, Plaintiff is able to walk and sit. (Dkt. 53, ¶ 34.) Defendants cite to *Hood v. Jefferson*, 2012 WL 3308684 (N.D. Ill. 2012), as a similar situation where chronic back pain was not found to be an objectively serious medical condition. However, in *Hood*, plaintiff's back pain was treatable with over-the-counter medications and did not require a specialist or emergency care. *Hood*, 2012 WL 3308684 at * 3. Here, Plaintiff claims pain even with medication, and Plaintiff was referred to a specialist. However, the medical records indicate that Plaintiff has mild or moderate scoliosis. (Dkt. 93 ¶¶ 21, 24.) There is no evidence, other than Plaintiff's declarations of discomfort, that his scoliosis is so severe that it constitutes a serious medical need. *See Wade v. Stroger*, No. 98 C 4262, 2000 WL 992286, at *4, n. 3 (N.D. Ill. June 22, 2000) (finding that there was no evidence of plaintiff's scoliosis constituted a serious medical need other than plaintiff's unsupported declarations).

However, even if Plaintiff's back pain constitutes an objectively serious medical condition, Obaisi was not deliberately indifferent. The record shows that Plaintiff has been prescribed pain medication, balm, and various braces for his back. Plaintiff has been given x-rays and MRIs and sent to specialists at UIC. Importantly, those specialists did not disagree with the course of treatment that Obaisi was following. *See Pyles*, 771 F.3d at 409 ("A medical

professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.") Plaintiff's mere disagreement with Obaisi's course of treatment is not enough to show deliberate indifference.

Nor did Obaisi persist "in a course of treatment known to be ineffective," which has been "recognized as a violation of the Eighth Amendment. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (citing *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990)). Plaintiff has been prescribed a variety of treatments including, among other things, physical therapy, several different types of pain killers, and referrals to specialists. (Dkt. 53 ¶¶ 13, 14, 18, 20, 26.) Moreover, the MRI of Plaintiff's lower back on July 28, 2015, indicated that Plaintiff's scoliosis was stable, and none of the specialists recommended a different course of treatment. (*Id.* ¶¶ 27, 29-31.) Obaisi's treatment of Plaintiff did not constitute medical indifference.

Plaintiff also argues that delays in his treatment amounted to deliberate indifference. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). Obaisi would be deliberately indifferent only if he was aware of Plaintiff's condition and refused to do anything about it. *See McGowan*, 612 F.3d at 640.

Obaisi did not see Plaintiff until September 11, 2012, and there is no indication that Obaisi was aware of Plaintiff's condition before that time. To the extent that Plaintiff is claiming delays were the fault of Obaisi after Obaisi had started treatment, there is simply no evidence of

8

that. Most of Plaintiff's medical appointments were missed due to prison lockdowns. (Dkt. 93, ¶ 22.) Plaintiff states that he missed other medical appointments because no medical provider was available. (Dkt. 101, ¶ 16.) However, the evidence shows that a medical provider was available, just not Plaintiff's preferred provider, Obaisi. (*Id.*) Plaintiff also claims an unreasonable delay in seeing a specialist, but Obaisi referred Plaintiff to a specialist in 2014. (Dkt. 101, ¶ 26.) There is also no evidence that any delays exacerbated Plaintiff's injury. Indeed, the evidence shows that Plaintiff's scoliosis has remained stable. (Dkt. 93, ¶ 30.)

Doctor Defendants also argue that Plaintiff has not exhausted his administrative remedies. Specifically, they argue that Plaintiff failed to timely appeal his grievance regarding medical care. Under the Prisoners Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, it is undisputed that Santos was not made aware of the response to his grievance until after the deadline to appeal had passed. (Dkt. 101, ¶ 36.) "[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Further, Plaintiff still petitioned the Administrative Review Board regarding his grievance, despite not receiving a timely answer. (Dkt. 101, ¶ 38.)

Doctor Defendants also argue that Plaintiff's generalized grievance about delayed medical care and back pain is insufficient to implicate Obaisi and Wexford. "[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Nor do Doctor Defendants claim that the grievance

9

procedure requires Plaintiff to identify specific bad actors or specific injuries caused by specific actors. Plaintiff has exhausted his remedies for the purposes of the PLRA.

Defendant Obaisi and Wexford's Motion for Summary Judgment [83] is granted as to Count I.

## Barnett

IDOC Defendants also argue that Plaintiff's back pain was not an objectively serious medical condition. However, even if Plaintiff's back pain was an objectively serious medical condition, Barnett's treatment of Plaintiff did not constitute medical indifference. On May 2, 2012, Plaintiff was seen by Defendant Barnett at his cell. (Dkt. 95, ¶¶ 34, 36). Barnett's progress note stated that Plaintiff was able to climb from the top of his bunk and that there was no swelling or bruising on his back. (*Id.* ¶ 36.) Barnett provided Plaintiff with analgesic balm and Tylenol and told Plaintiff that he would be scheduled to see a doctor. (*Id.*) Plaintiff was scheduled for a follow-up appointment on May 21, 2012, and Barnett testified that a note in the progress note stated that she did make the appointment. (*Id.* ¶¶ 38-39.) Barnett's treatment of Plaintiff did not constitute medical indifference.

Plaintiff further argues that Barnett's failure to refer him to a more qualified specialist constitutes deliberate indifference. In *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010), the Seventh Circuit overruled a grant of summary judgment where the evidence showed that a nurse knew about an inmates continued distress and did not refer him to a dentist to treat his tooth pain. *Berry*, 604 F.3d at 443-44. This case is distinguishable as Barnett and Plaintiff had only one interaction, for which Barnett provided treatment and scheduled an appointment with a doctor, and there is no evidence that Barnett knew about any continued distress.

IDOC Defendants' Motion for Summary Judgment [87] is granted as to Count I.

*Count II*

In Count II, Plaintiff alleges that Wexford was deliberately indifferent to his health by maintaining a policy or procedure under which inmates with serious medical conditions, like Plaintiff, were routinely denied timely access to proper or sufficient medical care. Wexford "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), cert. denied, 135 S. Ct. 1024, 190 L. Ed. 2d 832 (2015). "To recover against Wexford . . . [Plaintiff] must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Id.* at 796 (citing *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)).

However, Plaintiff does not specify what the policy was or present facts showing that a Wexford policy was the "moving force" behind any constitutional violation. *Wilson v. Cook Cty.*, 742 F.3d 775, 779 (7th Cir. 2014) (quoting *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012)). Plaintiff argues that the lack of a permanent medical director between May 13, 2012 and August 2, 2012, means that Wexford had a policy of failing to provide critical staffing and management. A "policy or practice of not having a full-time doctor stationed at the prison at all times" can result in a constitutional deprivation. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015). However, it is not disputed that there were interim medical directors who had the same responsibilities as a permanent medical director. It is also undisputed that when an interim medical director was not present, another physician would take on that person's duties. The search for a permanent medical director does not constitute a policy of failing to provide staffing and management when there was consistently someone performing the duties of a

medical director. There is also no evidence that the lack of a permanent medical director effected Plaintiff's medical care. The records reflect that the majority of Plaintiff's cancelled appointments were due to lockdowns. (Dkt. 93, ¶ 22; Dkt. 101, ¶ 16.) Other appointments were cancelled because Plaintiff refused to see anyone but the medical director. (Dkt. 101, ¶ 16.) Plaintiff points to two missed appointments, one on May 21, 2012, and one on August 6, 2012, which were before Obaisi became the permanent medical director. But there is no indication that these missed appointments were due to any policy or practice on the part of Wexford.

Defendant Obaisi and Wexford's Motion for Summary Judgment [83] is granted as to Count II.

*Count III*

In Count III, Plaintiff alleges that Correctional Officer Fisher intentionally and recklessly denied Plaintiff access to medical treatment. Deliberate indifference occurs when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However,

> [i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

For Fisher to be liable for the conduct of the medical staff, she "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye . . . ." *Gentry v. Duckworth*,

12

65 F.3d 555, 561 (7th Cir. 1995) (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Fisher testified that whenever an inmate came to the healthcare unit without a pass, and the inmate was not on the list, she would call the nurse and communicate what the inmate tells Fisher. (Dkt. 95, ¶ 27.) She also testified that nurses and doctors decide whether an inmate is seen in the healthcare unit when an inmate did not have a pass and was not on the list. (*Id.* ¶ 31.) As a non-medical prison official, Fisher was justified in relying on the medical advice of the nurse or doctor with whom she spoke. There is no evidence that she approved, condoned, or turned a blind eye to any deliberate medical indifference. Plaintiff does not dispute that Fisher had no knowledge about any delays in his access to medical care. (*Id.* ¶ 29.)

IDOC Defendants' Motion for Summary Judgment [87] is granted as to Count III.

*Count IV*

In Count IV, Plaintiff makes a claim for injunctive relief against all Defendants. "To demonstrate the need for injunctive relief, however, [Plaintiff] must show a real, continuing threat of harm." *Gray v. McCaughtry*, 72 F. App'x 434, 437 (7th Cir. 2003) (citing *Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993)). As Plaintiff has not shown that Defendants were deliberately indifferent to his serious medical needs, injunctive relief is not warranted.

Defendants' Motions for Summary Judgment [83, 87] are granted as to Count IV.

## CONCLUSION

Defendant Obaisi and Wexford's Motion for Summary Judgment [83] and Defendants Barnett, Fisher, and Williams's Motion for Summary Judgment [87] are granted. Judgment is entered in Defendants' favor, and the civil case is closed.

Date:    June 2, 2016

JOHN W. DARRAH
United States District Court Judge